DECISION AND JUDGMENT ENTRY
{¶ 1} Nikki Lewis appeals from her convictions for complicity to aggravated robbery and failure to comply with the order or signal of a police officer. First, Lewis contends the verdict of complicity to aggravated robbery is against the manifest weight of the evidence. She points to her own testimony that she did not know that her two male companions were going to commit the robbery and that she was coerced to drive the get-away vehicle under fear for her life. The state presented evidence that Lewis "cased" out the establishment just before it was robbed, drove the robbers away from the scene at a high rate of speed, and fled her vehicle and attempted to prevent the police from apprehending her when they stopped her vehicle after the robbery. These facts support the conviction. Moreover, when there are competing versions of the *Page 2 
events, we leave the issue of the witnesses' credibility to the trier of fact. Lewis' conviction is not against the manifest weight of the evidence.
 {¶ 2} Next, Lewis contends she received ineffective assistance of counsel because her attorney failed to emphasize to the jury that the state had the burden of proving her guilty beyond a reasonable doubt. Here, the evidence against Lewis was overwhelming. The court instructed the jury that the state had to prove its case beyond a reasonable doubt, and defense counsel argued that the state did not prove its case beyond a reasonable doubt. Counsel also argued the case against Lewis was "thin". Lewis has failed to prove her counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness. Overruling both assignments of error, we affirm the judgment of conviction.
 I. Facts {¶ 3} A grand jury indicted Lewis on one count of complicity to aggravated robbery, with a firearm specification, in violation of R.C. 2923.03(A)(2), 2911.01 (A)(1) and 2941.145, for aiding and abetting Thomas Allen in robbing the B L Game Room of Proctorville, Ohio with a firearm. The grand jury also indicted Lewis on one count of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B)(C)(5)(a)(ii), for eluding or fleeing police when an officer signaled her to stop the motor vehicle she was driving after the robbery. After Lewis pleaded not guilty, the matter proceeded to a jury trial which produced the following evidence. *Page 3 
 {¶ 4} The owner and a customer of the B L Game Room testified that Nikki Lewis came to the game room around 9:00 PM on April 5, 2006; she inquired whether her father was there and left when told he was not. Approximately five minutes later, a man with a handgun entered the game room, pointed the gun at the owner and customer, and demanded money. A man, identified as Johnny Belcher, accompanied the gunman but waited outside the door. Although the man with the gun wore a blue and white bandana over the lower half of his face, the owner of the game room recognized him as Lewis' boyfriend, Thomas Allen, who had been into the game room with Lewis on several previous occasions. The owner gave the robber her purse, which had money bags containing $2700 from the business. The robber ran out the door, and the customer looked out the door and saw a red minivan leaving the scene at a high rate of speed. The owner immediately reported the incident to the police.
 {¶ 5} Shortly after hearing the radio dispatch concerning the robbery, a sheriffs deputy saw a female, subsequently identified as Lewis, driving a vehicle that matched a description of the getaway vehicle; the deputy activated the lights and siren on his patrol car and pursued the vehicle about four or five miles into West Virginia at speeds of up to 80 MPH. The deputy testified that the red minivan eventually stopped and three people, including Lewis, got out and "took off running". According to the deputy, Lewis ran from the vehicle, climbed over a fence, ran down an alley, and threw a trashcan down in front of him to block his attempts to apprehend her. The deputy testified that when he finally tackled *Page 4 
Lewis two blocks from where the red minivan stopped, she told him she had been kidnapped.
 {¶ 6} An investigating officer testified he interviewed Lewis at the jail the day after the robbery. She told him she had gone to the game room looking for her father, and she did not respond when he suggested that she had been "casing the joint". The officer stated that Lewis did not tell him that anyone had forced her at gunpoint to run from the police.
 {¶ 7} In her defense, Lewis testified that she had driven her van to the game room with Belcher and her boyfriend Allen to look for her father. She denied "casing out the joint". Lewis testified that when she got back into her van after finding that her father was not there, Allen and Belcher told her that they had to go to the bathroom. She stated they got out of the car, returned two or three minutes later, and when they told her "Let's go", she drove away at a normal rate of speed. Lewis denied knowing of Allen's and Belcher's plan to rob the game room, and denied knowing that either of them had a gun. Lewis testified that she first learned of the robbery when the police car pulled in behind her van, at which point Allen pulled out his gun and told her not to pull over because he had just robbed the game room. She stated that she was scared that Allen was going to shoot her and that he forced her to drive her car and to get out and run when she stopped the car. Lewis denied throwing a trash can at the officer as he ran after her, and she contended the chase was half a block, not two blocks, and that she stopped on her own. She denied seeing a blue and *Page 5 
white bandana that evening, even though one was sitting on the front passenger seat of her van when the police impounded it.
 {¶ 8} Thomas Allen, the "boyfriend", who had already pleaded guilty in connection with the robbery, testified on Lewis' behalf and generally confirmed her version of the events.
 II. Assignments of Error {¶ 9} The jury found Lewis guilty as charged, and the trial court imposed a sentence on her totaling eight years imprisonment for the offenses. Lewis appeals her convictions, asserting:
 1. THE JURY'S VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 2. INEFFECTIVE ASSISTANCE OF COUNSEL PREJUDICED THE DEFENSE.
 III. Manifest Weight of the Evidence {¶ 10} In her first assignment of error, Lewis contends the verdict of complicity to aggravated robbery is against the manifest weight of the evidence. In doing so, she relies upon her own testimony that she did not know that her two male companions were going to commit the robbery and that she was coerced to drive the get-away vehicle under fear for her life.
 {¶ 11} Our function when reviewing the weight of the evidence is to determine whether the greater amount of the credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, *Page 6 
and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. We will order a new trial only in the exceptional case in which the evidence weighs heavily against the conviction.State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 100, citingMartin, at 175. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy (1998),84 Ohio St.3d 180, 193-194; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 {¶ 12} The weight to be given evidence, and the credibility to be afforded testimony, are issues to be determined by the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329; State v. Frazier (1995),73 Ohio St.3d 323, 339. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 13} To support a conviction for complicity pursuant to R.C. 2923.03(A)(2), the evidence must show that Lewis "supported, assisted, encouraged, cooperated with, advised, or incited the principals] in the commission of the crime [aggravated robbery], and that [she] shared the criminal intent of the principals, which] may be inferred from the circumstances surrounding the crime." State v. Johnson,93 Ohio St.3d 240, syllabus. *Page 7 
?`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'"Johnson, at 245, quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34.
 {¶ 14} R.C. 2911.01(A)(1), which defines aggravated robbery, states: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 15} Lewis' conviction for complicity to aggravated robbery is not against the manifest weight of the evidence. The state presented evidence from which the jury could easily conclude that Lewis supported, assisted, encouraged, or cooperated with Allen and Belcher (the principals) and shared their intent to rob the game room. The record indicates Lewis: "cased out" the game room for Allen and Belcher before the robbery; drove the getaway car after Allen and Belcher committed the robbery; attempted to elude the police during their pursuit of her vehicle after the robbery; fled her vehicle and attempted to prevent the police from apprehending her; and failed to answer questions in her interview with the police the day after the robbery. We leave the issue of the witnesses' credibility to the trier of fact; accordingly, they were free to discredit Lewis' testimony that she did not know that Allen and Belcher were going to commit the robbery and that she was coerced to drive the get-away vehicle under fear for her life. When there is evidence to support both versions of events, we allow the jury to decide *Page 8 
which one is more believable. Accordingly, we overrule Lewis' first assignment of error.
 IV. Ineffective Assistance of Counsel {¶ 16} In her second assignment of error, Lewis contends defense counsel rendered ineffective assistance of counsel by failing to emphasize to the jury that the state had the burden of proving her guilty beyond a reasonable doubt.
 {¶ 17} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to prevail on a claim of ineffective assistance of counsel, Lewis must show (1) her counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced her defense so as to deprive the defendant of a fair trial. State v. Smith (2000), 89 Ohio St.3d 323,327, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. State v. White (1998), 82 Ohio St.3d 16, 23;Bradley, at paragraph three of the syllabus. Failure to establish either element is fatal to the claim. Strickland; *Page 9 Bradley. Our review of an ineffective assistance of counsel claim is de novo. See, Bradley at 142-143.
 {¶ 18} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 {¶ 19} In closing argument, Lewis' defense counsel argued the evidence was "very, very thin" that she knew about the robbery before Allen and Belcher robbed the game room. Based upon the evidence, counsel contended, Lewis "clearly was not casing the joint" and did not find out about the robbery until after it happened. Counsel asserted that Lewis acted under duress and out of fear for her life when she failed to stop her vehicle after the deputy's signal. Defense counsel suggested that the reason Lewis did not tell the investigating officer, who conducted his interview of her at jail, that she acted out of coercion and fear for her life was because "we all know that things could happen in jails to people that incriminate other people" and Lewis did not want "to incriminate anybody else until she talked with her lawyer." In summation, defense counsel argued: "There's no way that the State can legitimately say that they proved the case beyond a reasonable doubt" and "Nikki Lewis is not guilty of either of the offenses that she's charged with." This performance does not fall below an objective standard of reasonableness. *Page 10 
 {¶ 20} Lewis has not demonstrated that defense counsel's performance was deficient. The evidence against Lewis was overwhelming, the court instructed the jury that the state had to prove its case beyond a reasonable doubt, and defense counsel argued that the evidence against Lewis was "thin" and that the state did not prove its case beyond a reasonable doubt. Because she has not satisfied the first prong of the analysis, we need not address the second one. Lewis' second assignment of error is overruled.
 {¶ 21} Having found both of the assignments of error to be meritless, we affirm the judgment of conviction.
 JUDGMENT AFFIRMED. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions. McFarland, P.J. Abele, J.: Concur in Judgment and Opinion. *Page 1 
 {¶ 22} Michael Davis appeals his conviction for second-degree aggravated trafficking in drugs. He asserts that the trial court erred by permitting the state to amend the original indictment from a fourth-degree felony to a second-degree felony as the amendment changed the identity of the offense. We agree. The amendment's increase in the degree of the offense changed its identity in violation of Crim. R. 7(D) because it resulted in Davis not having prior notice of the charge and it violated his right to presentment of the charges to the grand jury. Furthermore, although Davis's trial counsel did not object to the amendment, we have previously recognized Crim. R. 7(D) violations as plain error and do so here, as well. *Page 2 
 {¶ 23} Our disposition of Davis's first assignment of error renders his remaining two assignments of error moot, and we need not address them. See App. R. 12(A)(1)(c). Therefore, we reverse Davis's conviction.
 I. FACTS {¶ 24} The Highland County grand jury returned a thirty-three count indictment that named eleven defendants, including Davis. The indictment charged Davis with: (1) engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1); (2) two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), both fourth-degree felonies; (3) two counts of receiving stolen property, in violation of R.C. 2913.51; (4) deception to obtain a dangerous drug, in violation of R.C. 2925.22; and (5) possession of drugs, in violation of R.C. 2925.11.
 {¶ 25} Count Fifteen, one of the aggravated trafficking offenses, charged:
 "On or about February 21, 2005 and February 26, 2005, and in Highland County, Ohio and as part of a course of criminal conduct in Fayette, Ross and other counties, Charles R. Davis, Michael A. Davis and Charles Davis Motor Sales, Inc. did knowingly sell or offer to sell Oxycontin, a schedule II controlled substance in an amount less than the bulk amount, to wit: approximately 7.2 grams, in violation of R.C. 2925.03(A)(1) * * *."
 {¶ 26} The court subsequently granted the state's motion to amend count fifteen of the indictment to read:
 "On or about February 21, 2005 and February 26, 2006, [sic] and in Highland County, Ohio and as a part of a course of criminal conduct, Michael A. Davis and Charles R. Davis and Charles Davis Motor Sales, Inc. did knowingly sell or offer to sell Oxycontin, a schedule II controlled substance in an amount greater than five times the bulk amount but less than fifty times the bulk amount, in violation of R.C. 2925.03(A)(1) * * *." *Page 3 
 {¶ 27} The jury found Davis guilty of the amended charge of aggravated trafficking in drugs (count fifteen) and of deception to obtain a dangerous drug. It found him not guilty of the remaining charges.
 {¶ 28} After the jury returned its verdict, Davis filed a motion for acquittal under Crim. R. 29(C). The trial court overruled his motion and sentenced him to a two-year concurrent term of imprisonment for the aggravated trafficking and the deception to obtain a dangerous drug offenses.
 II. ASSIGNMENTS OF ERROR {¶ 29} In his appeal, Davis raises the following assignments of error.
 First Assignment of Error:
 The trial court erred when it permitted the amendment of Count Fifteen, aggravated trafficking in drugs which elevated the offense from a felony of the fourth degree to a felony of the second degree.
 Second Assignment of Error: The trial court erred in overruling defendant-appellant's motion to set aside the jury verdict.
 Third Assignment of Error: Appellant was denied effective assistance of counsel under Article I, Sections 10 and 16 of the Ohio Constitution and the Sixth Amendment to the United States Constitution.
 III. AMENDMENT OF INDICTMENT {¶ 30} We find Davis's first assignment of error dispositive of his appeal. There, Davis argues that the trial court erred by permitting the state to amend count fifteen of the indictment. He asserts that amending the indictment from a fourth-degree felony aggravated trafficking offense to a second-degree felony aggravated trafficking offense violated his Fifth Amendment right to be indicted by a grand jury. *Page 4 
 A. PLAIN ERROR {¶ 31} Because Davis failed to object to the amendment of the indictment, he has waived all but plain error. See Crim. R. 52(B) (stating that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). The Ohio Supreme Court has cautioned that we are to take notice of plain error under Crim. R. 52(B) "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. The plain error doctrine permits correction of judicial proceedings only when error is clearly apparent on the face of the record and is prejudicial to the appellant. See, e.g., State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.
 {¶ 32} We have previously recognized an amendment to an indictment that violates Crim. R. 7(D) as plain error. See State v. Atkins (July 14, 1997), Washington App. No. 96CA34.
B. GENERAL PRINCIPLES GOVERNING AMENDMENTS OF INDICTMENTS {¶ 33} Although Davis frames this as a Fifth Amendment issue under the United States Constitution, the United States Supreme Court has not found that amendment applicable to the states through theFourteenth Amendment. See Ring v. Arizona (2002), 536 U.S. 584, 597, fn.4,122 S.Ct. 2428, 153 L.Ed.2d 556 (stating that the Fourteenth Amendment ?`has not been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury?`"), quoting Apprendi v. New Jersey
(2000), 530 U.S. 466, 477, fn.3, 120 S.Ct. 2348, *Page 5 147 L.Ed.2d 435. Therefore, we construe his argument as being brought under Section 10, Article I of the Ohio Constitution.
 {¶ 34} Section 10, Article I of the Ohio Constitution states: "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." State v. Headley (1983), 6 Ohio St.3d 475,478-79, 453 N.E.2d 716. This rule ensures that a criminal defendant will not be "surprised" by a charge. See In re Reed, 147 Ohio App.3d 182,2002-Ohio-43, 769 N.E.2d 412, at ¶ 33.
 {¶ 35} By specifying when a court may permit an amendment to an indictment, Crim. R. 7(D) supplements the constitutional right to presentment and indictment by a grand jury, see id., and State v.Strozier (Oct. 5, 1994), Montgomery App. No. 14021,. The rule states:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it *Page 6 
clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefore is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.
 {¶ 36} Thus, the rule permits most amendments but flatly prohibits amendments that change the name or identity of the crime charged. See State v.Kittle, Athens 04CA41, 2005-Ohio-3198, at ¶ 12, citing State v. O'Brien (1987), 30 Ohio St.3d 122,126, 508 N.E.2d 144, which approved an amendment that added an essential element to the charge. But, a trial court commits reversible error when it permits any amendment that changes the name or identity of the offense charged. Kittle; State v.Smith, Franklin App. No. 03AP1157, 2004-Ohio-4786, at ¶ 10; see also, State v. Headley (1983),6 Ohio St.3d 475, 478-479, 453 N.E.2d 716. "Whether an amendment changes the name or identity of the crime charged is a matter of law." Kittle; see, also,State v. Cooper (June 25, 1998), Ross App. No. 97CA2326, citing State v. Jackson (1992),78 Ohio App.3d 479, 605 N.E.2d 426. Hence, we review this question de novo. Kittle.
 {¶ 37} Here, the name of the offense remained the same: aggravated trafficking in drugs. The question we must resolve is whether elevating the degree of the offense from a fourth-degree felony to a second-degree felony changed the identity of the offense. As one court has noted, "[t]he issue is not *Page 7 
free from difficulty." State v. Smith, Clark App. No. 2001-CA-98, 2002-Ohio-4118, at ¶ 9; see, also, Katz and Gianelli, Ohio Criminal Law (2007), Section 40:7 ("What constitutes a change in the name or identity of the crime charged has been the subject of some controversy."). Our research confirms these assessments.
 C. INCREASE IN DEGREE OR SEVERITY {¶ 38} The Supreme Court of Ohio has indicated an amendment that changes neither the degree nor the severity of an offense does not change the identity of the offense. See State v. O'Brien (1987),30 Ohio St.3d 122, 126-127, 508 N.E.2d 144, which concluded that amending indictment to include the essential mens rea element of "recklessness" did not change the identity of the offense. The court held "the identity of this crime was not changed by the addition * * * to the indictment. Neither the penalty nor the degree of the offense was changed as a result of the amendment." See, generally, State v. Martin, Brown App. No. CA2003-09-011, 2004-Ohio-4309, at ¶ 24; State v. Smith, Franklin App. No. 03AP-1157, 2004-Ohio-4786, at ¶ 11; State v. Daughenbaugh, Seneca App. No. 13-04-11, 2004-Ohio-4528, at 9; State v. Hickman, Summit App. No. 20883, 2002-Ohio-3406, at ¶ 43; State v. Waites (Dec. 20, 1996), Lake App. No. 93-L-009; State v. Finn (Apr. 29, 1994), Montgomery App. No. 14096; State v. Head (Nov. 21, 1991), Cuyahoga App. No. 59367 (all noting that the amendment did not increase the degree of the offense).
 {¶ 39} While the court in O'Brien stated its conclusion in the negative, we believe it can fairly be construed to mean an amendment that increases the *Page 8 
degree of the offense does run afoul of Crim. R. 7(D). This conclusion is bolstered by State v. Headley (1983), 6 Ohio St.3d 475, 453 N.E.2d 716. There, the court held that amending a trafficking in drugs indictment to describe the controlled substance involved changed the name and identity of the offense by increasing the severity of the offense from "trafficking in drugs" to "aggravated trafficking in drugs." The court thus held that Crim. R. 7(D) prohibited the amendment. In its analysis the court stated:
 "In this case, [the defendant] was charged under R.C. 2925.03, relating to trafficking in drugs. Generally, that statute prohibits the selling, distribution, production or possession of certain controlled substances, or drugs, for certain purposes. The severity of the offense is dependent upon the type of drug involved. Under R.C. 2925.03(C), the offense is aggravated trafficking if the substance involved is a Schedule I drug, with the exception of marijuana, or a Schedule II drug. Under R.C. 2925.03(D), if the substance involved is a Schedule III, IV or V drug, the offense is the lesser one of trafficking in drugs.
 Under this analysis, it is evident that R.C. 2925.03 sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved. As such, the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment. The omission of that information cannot be cured by amendment, as to do so would change the very identity of the offense charged." (Emphasis supplied)
Id. at 479.
 {¶ 40} However, in a case somewhat analogous to ours, one appellate court determined that amending the indictment to change the amount of drugs involved did not change the identity of the offense. SeeState v. Durr (July 28, 2000), Sandusky S-97-056, where the original indictment charged:
 "On or about December 13, 1996, in the vicinity of North Front and Milton Streets, Fremont, Sandusky County, Ohio, the *Page 9 
defendant did knowingly obtain, possess or use a controlled substance, to wit: 5.2 grams of Crack Cocaine, a Schedule II drug."
The indictment further alleged that the offense was in violation of R.C. 2925.11 and that it was a third degree felony because the amount alleged was more than five and less than ten grams. The evidence at trial prompted the state to amend the indictment to allege that an additional two grams of crack cocaine were involved. The appellate court concluded that the amendment did not change the name or identity of the crime charged because the defendant still was charged "with possession of more than five and less than ten grams of crack cocaine and still charged appellant with a third degree felony." Thus, the amendment did not change the degree of the offense.
 {¶ 41} Here, the state changed the indictment to charge a greater amount of drugs was involved, which consequently elevated the degree of the offense from a fourth-degree felony to a second-degree felony. Generally, a violation of R.C. 2925.03(A)(1) involving a schedule II drug, i.e., aggravated drug trafficking, is a fourth-degree felony. See R.C. 2925.03(C)(1)(a). However, R.C. 2925.03(C)(1)(d) states that aggravated drug trafficking is a second-degree felony if the amount involved equals or exceeds five times the "bulk amount" but is less than fifty times the "bulk amount." The original indictment charged only a fourth degree felony and stated the amount involved was 7.2 grams. The caption of the indictment stated that the offense was a fourth-degree felony. The indictment did not specify the amount in terms of "bulk amount." The amendment ultimately changed the offense from a fourth-degree felony to a second-degree felony. This increase in the severity of the offense changes the identity of the *Page 10 
offense because of the lack of notice to the accused and the violation of his right of presentment of the charges to the grand jury.Headley, supra, O'Brien, supra. Thus, Crim. R. 7(D) flatly prohibits the amendment and the trial court erred by permitting the state to do so.
 {¶ 42} The state nevertheless asserts that under State v. Smith
(1983), 14 Ohio App.3d 366, 471 N.E.2d 795, the amendment did not change the name or identity of the offense. In that case, the court held that an amendment to an R.C. 2925.03 complicity indictment to include the amount of drugs involved did not change the name or identity of the crime. The original indictment read: "[The defendant] did knowingly aid or abet David Dillon in committing a violation of [R.C. 2925.03], to wit: Trafficking in Marijuana * * *." The trial court subsequently allowed the state to amend the indictment to state the amount of drugs involved.
 {¶ 43} The appellate court framed the issue as whether in a complicity indictment the addition of the amount sold or offered to be sold by the principal constitutes a change in the name or identity of the crime charged. Id. at 368. The court concluded Headley was not controlling because it involved the type of drug, whereas the Smith indictment involved the amount of a previously specified drug. The court stated that "the degree of the offense or severity of the penalty does not necessarily control the question of a change in the name or identity of the crime or whether a material element has been omitted." Id. at 369.
 {¶ 44} We choose not to follow Smith as it pre-dates subsequent Ohio Supreme Court and intermediate appellate court cases interpretingHeadley, and in our opinion, it runs counter to those subsequent cases. As O'Brien (decided *Page 11 
after Smith) implied, a change in the identity of the offense occurs when the amendment increases the degree or severity of the offense charged.
 E. CONCLUSION {¶ 45} Under Crim.7(D), the trial court can approve most amendments to an indictment. It can even approve the addition of some elements that have been overlooked. But, it cannot permit any amendment that results in a change in the name or identity of the charge. Thus, where the indictment omits the mens rea element of a crime, the court can correct the omission by amendment if the name and the identity of the crime do not change. O'Brien, supra. But the State cannot switch the identity of a crime via an amendment. Headley, supra. And when it changes the degree of the offense from a fourth-degree felony to a second-degree felony, the amendment effectively changes the identity of the crime in violation of Crim. R. 7(D). O'Brien, supra. It also runs afoul of constitutional protections requiring notice to the accused and the accused's right to presentment to the grand jury.
 {¶ 46} Because Crim. R. 7(D) flatly forbids amendments changing the identity of a charge, the amendment was unlawful. Thus, the trial court erred by permitting the state to amend the indictment. Because of its constitutional nature, the error is one that merits applying the plain error doctrine. Additionally, given the flat prohibition in Crim. R. 7(D) against amendments changing the identity of charges, Davis need not demonstrate that he suffered any prejudice as a result of the forbidden amendment. See Kittle, supra; Middletown v. *Page 12 Blevins (1987), 35 Ohio App.3d 65, 67, 519 N.E.2d 846; see, also,State v. Gilleland, Champaign App. No. 2004CA1, 2005-Ohio-659, at ¶ 15.
 {¶ 47} Accordingly, we reverse the trial court's judgment and remand for further proceedings.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions. McFarland, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion as to Assignments of Error I III; Dissents as to Assignment of Error II. *Page 1