DECISION AND JUDGMENT ENTRY
{¶ 1} A Pike County jury found James VanHoose guilty of aggravated vehicular assault, vehicular assault, and failure to stop at an injury accident after he struck six-year-old Chasity Spillman with his car as she crossed the street to board her school bus. After waiving his rights to remain silent and for an attorney, Vanhoose gave a statement to the State Highway Patrol and admitted he consumed six to eight beers sometime before the accident. At trial, the State presented evidence that VanHoose's blood alcohol content (BAC) at the time of the accident was 0.163, more than twice the presumptive limit. VanHoose presented evidence that he was not impaired by alcohol and that his consumption of three to four beers and two "nerve pills" after leaving the scene of the accident caused his high BAC and confusion. *Page 2 
 {¶ 2} VanHoose first argues that his conviction for aggravated vehicular assault is against the manifest weight of the evidence. He contends the State's expert witness, who extrapolated VanHoose's BAC back to the time of the accident from a blood sample taken five hours later, failed to account for alcohol consumed by VanHoose after the accident. Thus, he argues the opinion was so lacking in credibility that the jury should not have afforded it any weight whatsoever. However, the State introduced VanHoose's admission that he had consumed alcohol before the accident, his prior inconsistent statement that he did not consume any alcohol after the accident, and the expert's opinion on his BAC. The issue, therefore, involves the credibility of witnesses, which we generally leave to the jury to resolve. We cannot conclude that the jury clearly lost its way in believing the State's version of the events over Van Hoose's evidence.
 {¶ 3} Next, VanHoose contends that the trial court erred in not suppressing the statement he gave to law enforcement after the accident. VanHoose asserts he did not voluntarily waive his right to remain silent and his right to counsel. However, VanHoose never argued at the hearing that his statements should be suppressed because he was too intoxicated and emotionally distraught to voluntarily consent to giving a statement to law enforcement. Thus, he forfeited that issue. Furthermore, the evidence presented at that hearing supports the trial court's finding that VanHoose voluntarily waived these rights.
 {¶ 4} Finally, VanHoose argues that the trial court committed plain error and violated the Ex Post Facto and Due Process clauses of the Constitution of the United States in retroactively applying the remedial holding of the Supreme Court of Ohio in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, to crimes predating *Page 3 
that decision. He also asserts that trial counsel was ineffective for failing to object to the retroactive application of Foster to his case. However, we have consistently held that the trial court does not violate ex post facto or due process principles by following the remedy mandated by the Supreme Court of Ohio in Foster and that trial counsel does not provide ineffective assistance by failing to raise these objections at sentencing. We adhere to these holdings and affirm the judgment below.
 I. Facts {¶ 5} A car driven by VanHoose struck Chasity Spillman as she crossed the road to board her school bus, which had come to a stop, engaged its flashing red lights, and extended its stop sign. The bus was visible to traffic at a distance of over three hundred yards. After the bus's driver signaled for the four children waiting at the stop to cross, he noticed that a car did not appear to be stopping. He blew his horn and yelled for the children to step back, but the car hit Spillman and dragged her under the wheel before coming to a stop in a ditch. VanHoose got out of his car and, with the help of several older boys on the bus, pulled Spillman from under the car. While the bus driver performed first aid, VanHoose told one of the nearby residents to call 911. He then left the scene on foot, going through the woods to reach his home. Various individuals at the scene, including Spillman's mother, recognized VanHoose and identified him as the driver of the car that hit the child.
 {¶ 6} Trooper Robert Ruth, accompanied by another trooper and a sheriff's deputy, went to VanHoose's house and asked him to return to the accident scene. After confirming that the car belonged to the VanHooses, Ruth arrested him and took him to the Waverly Police Department for a statement. There, Ruth and his supervisor, *Page 4 
Sergeant Chad Neal, questioned VanHoose after he signed a form acknowledging his right to remain silent and his right to counsel. VanHoose then gave the following statement, which he, Ruth, and Neal all signed:
 Q. Did you go straight from Ray Shipley's toward home?
 A. I assume.
 Q. What happened at the crash?
 A. I pulled a little girl out from under my car.
 Q. Why did you have a little girl under [your] car?
 A. I have no idea.
 Q. Do you remember the stopped school bus?
 A. Not until after I pulled her out.
 Q. Did you see children in the area?
 A. No.
 Q. What did you do after you pulled the little girl out?
 A. I told someone to get help, then I panicked and walked away.
 Q. Where did you go?
 A. Into the woods.
 Q. Then where?
 A. My house.
 Q. Why did you panic?
 A. I don't know.
 {¶ 7} VanHoose's blood sample revealed a BAC of 0.084 more than five hours after the accident. The State charged VanHoose with aggravated *Page 5 
vehicular assault, vehicular assault, and failure to stop after an injury accident, violations of R.C. 2903.08(A)(1)(a), R.C.2903.08(A)(2)(b), and R.C. 4549.02(A), respectively.
 {¶ 8} Prior to trial, VanHoose filed a motion to suppress his statement as well as the results of the blood test. Although he included the argument that his statements were "obtained in violation of hisFifth Amendment right against self-incrimination and his Fifth andSixth Amendment right to counsel as applicable under theFourteenth Amendment[,]" he did not specifically argue that ground at the suppression hearing or in his supplementary memorandum of law. Furthermore, he never made the specific argument that his statements were involuntary because his intoxication and his emotional distress overrode his free will. Instead, his constitutional argument focused on his contention that law enforcement lacked probable cause to arrest him. At the suppression hearing, Trooper Ruth testified that he went over each of VanHoose's constitutional rights with him, that VanHoose understood each right that he was waiving, and that VanHoose read his statement before he signed it. Neither Trooper Ruth nor Sergeant Neal testified that they believed VanHoose was too intoxicated to be questioned; VanHoose did not present any evidence at the hearing. The trial court denied the motion to suppress.
 {¶ 9} At trial the State presented the testimony of Dr. John Wyman, chief toxicologist at the Franklin County Coroner's Office, who used a technique called "retrograde extrapolation" to determine VanHoose's BAC at the time of the accident. However, Dr. Wyman stated that his findings rested on the assumption that VanHoose had not had any more alcohol after the accident. He concluded that VanHoose had a *Page 6 
BAC of 0.163 at the time his car struck Spillman, and he testified that with such a BAC, the average person would be impaired by alcohol.
 {¶ 10} VanHoose testified that he had three to four beers with his friend Ray Shipley between 10:30 p.m. and 12:00 a.m. the night before the accident. He testified that he spent the night at Shipley's house and drove home the next morning. Although his brakes had functioned properly as he drove home, he explained that they would not work when he attempted to brake for the school bus. VanHoose testified that his brakes did not catch until it was too late to stop the car. After pulling the child from under his car, VanHoose spoke with a neighbor, Robert Sturgill, telling Sturgill that he had hit a child and to call 911. Sturgill testified that VanHoose smelled like beer, although he was not sure whether that smell came from VanHoose's breath or clothes. VanHoose explained that, after talking with Sturgill, he panicked and ran home. He told his wife what had happened, and she gave him two of her "nerve pills" to calm him down. VanHoose testified that he also drank three to four beers, and his wife testified that she threw four beer cans out the front door that morning. By the time he had decided to get in touch with the police, Trooper Ruth had arrived, and VanHoose accompanied Ruth to the scene, where Ruth arrested him. VanHoose testified that, after his arrest, he was "in and out" of awareness and that he didn't recall giving the answers on the statement to Trooper Ruth. He explained that at the time he gave the statement, he was in a "panic state" and confused.
 {¶ 11} The jury found VanHoose guilty of aggravated vehicular assault and vehicular assault, each with the specification that he was driving with a suspended license. The jury also found VanHoose guilty of failing to stop after an injury accident. *Page 7 
The trial court sentenced VanHoose to three years in prison for vehicular assault with the accompanying specification, five years in prison for aggravated vehicular assault with the accompanying specification, and 11 months in prison for failure to stop after an injury accident, with each sentence running concurrently. VanHoose now brings this appeal.
 II. Assignments of Error {¶ 12} VanHoose presents four assignments of error:
 1. "The trial court violated James VanHoose's rights to due process and a fair trial when it entered a judgment of conviction for aggravated vehicular assault, which was against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, and Section16, Article I of the Ohio Constitution. (Judgment Entry Filed February 20, 2007)."
 2. "The trial court erred when it admitted into evidence the statements made by James VanHoose during a custodial interrogation, because those statements were elicited in violation of his right to counsel and right against self-incrimination. (May 12 and June 16, 2005 Suppression Hearing; Journal Entry Filed July 12, 2005). Fifth and Sixth Amendments to the United Stated Constitution."
 3. "The trial court committed plain error when it retroactively applied the remedial holding from the Ohio Supreme Court decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, to James VanHoose, whose crimes of conviction predated Foster. (February 8, 2007 Sentencing Hearing T. pp. 27-33; Judgment Entry Filed February 20, 2007). This is a violation of both the Ex Post Facto and Due Process Clauses of the United Stated Constitution."
 4. "James VanHoose was denied the effective assistance of trial counsel when his counsel failed to raise an objection to an illegal sentence. (February 8, 2007 Sentencing Hearing T. pp. 27-33; Judgment Entry Filed February 20, 2007). This is a violation of the Sixth Amendment to the United Stated Constitution and Section 10, Article I of the Ohio Constitution." *Page 8 
 III. The Manifest Weight of the Evidence {¶ 13} In his first assignment of error, VanHoose argues that his conviction for aggravated vehicular assault was against the manifest weight of the evidence because Dr. Wyman's testimony is not credible. Although VanHoose and his wife testified that VanHoose had three to four beers after the accident, Dr. Wyman had assumed that VanHoose did not consume any alcohol after the accident when he estimated VanHoose's BAC at the time of the accident. Dr. Wyman relied on VanHoose's prior statement to police that he had not had any alcohol after the accident.
 {¶ 14} Our standard of review for manifest weight arguments is a familiar one:
 When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St .2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. E/ey (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "exceptional case in which the evidence weighs heavily against conviction." Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175; see also, State v. Lindsey (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.
State v. Brooker, 170 Ohio App.3d 570, 2007-Ohio-588, at ¶ 16-17. *Page 9 
 {¶ 15} VanHoose has ultimately challenged the credibility determinations made by the jury in this case. In effect, he argues that the verdict is against the manifest weight of the evidence because the jury chose to give little credit to VanHoose's own testimony that he continued drinking after the accident; instead, it chose to believe Trooper Ruth's version of the events, which included VanHoose's statement that he had not had any drinks after the accident. However, we leave the issues of weight and credibility of the evidence to the fact finder, as long as there is any rational basis in the record for their decision. State v. Lewis, Lawrence App. No. 06CA20, 2007-Ohio-2250, at ¶ 12. We defer to the fact finder on these issues because the fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Id., quoting Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80. Here, the jury's verdict is plausible and has substantial factual support. Based upon Trooper Ruth's contention that VanHoose had expressly denied consuming alcohol after the accident, Dr. Wyman's assumption was reasonable and worthy of belief if the jury so chose. In other words, Dr. Wyman's testimony was not so lacking in credibility that no reasonable juror could afford it any weight. Therefore, we cannot say that the jury clearly lost its way in crediting the State's evidence over VanHoose's trial testimony. We overrule VanHoose's first assignment of error.
 IV. Suppression of Custodial Statements {¶ 16} In his second assignment of error, VanHoose argues that the trial court should have suppressed his custodial statements to law enforcement because his "rational faculties were overridden by his level of intoxication and the emotional stress *Page 10 
associated with the accident * * *." In the entry denying the motion to suppress, the trial court found that "the evidence at the suppression hearing shows that the Defendant was properly advised of his right to remain silent and his right to counsel * * * as required by Miranda v.Arizona (1966), 384 U.S. 436, and its progeny; and that the Defendant knowingly, voluntarily and intelligently waived such constitutional rights and made a statement. No grounds for suppression of such statements were shown at the hearing."
 {¶ 17} Our standard of review is again familiar:
 When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; State v. Garrett, Adams App. No. 05CA802, 2005-Ohio-5155, ¶ 8. In a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 765. Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; Garrett, supra. Accepting those facts as true, we must independently determine, without deference to the trial court, whether the trial court reached the correct legal conclusion in applying the facts of the case. State v. Roberts, 110 Ohio St.3d 71, 850 N.E.2d 1168, 2006-Ohio-3665, ¶ 100, citing State v. Burnside, 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, ¶ 8; State v. Acord, Ross App. No. 05CA2858, 2006-Ohio1616, ¶ 9. See, generally, United States v. Arvizu (2002), 534 U.S. 266, 122 S. Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996), 517 U.S. 690, 116 S. Ct. 1657, 134 L.Ed.2d 911.
State v. Ralston, Ross App. No. 06CA2898, 2007-Ohio-177, at ¶ 14.
 {¶ 18} VanHoose listed 17 grounds for suppressing his custodial statement, the chemical tests, and the observations regarding his sobriety. Ground 16 was: "Statements obtained from the Defendant were obtained in violation of his Fifth Amendment right against self-incrimination and both his Fifth and Sixth Amendment right to counsel as applicable under the Fourteenth Amendment." However, nowhere in *Page 11 
his motion to suppress, his questioning of witnesses, presentation of evidence, or argument at the suppression hearing, or his post-hearing memorandum did VanHoose ever raise the issue that he was too intoxicated and emotionally distraught to give a valid waiver of hisMiranda rights. Before the prosecution shoulders the burden of proof on the voluntariness of the such a waiver, the defendant must first state the basis for his motion to suppress, setting forth factual and legal issues with sufficient clarity to alert the court and prosecutor to the issues at hand. As we explained in State v. Marcinko, Washington App. No. 06CA51, 2007-Ohio-1166, at ¶ 22:
 "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."
(Quoting Xenia v. Wallace (1998), 37 Ohio St.3d 216, 218-219,524 N.E.2d 889.) At no time while the trial court considered the motion to suppress did VanHoose ever put forward any factual basis or argument that his waiver was involuntary due to his intoxication and emotional distress. Having failed to raise the issue in the trial court, he has forfeited the right to raise it on appeal. Marcinko, at ¶ 23; see also State v.Shindler (1994), 70 Ohio St. 3d 54, 58, 636 N.E.2d 319 ("By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived."); State v. Wilson, Medina App. No. 02CA0013-M, 2003-Ohio-540, at ¶ 16 ("Appellant's motion to suppress did not allege that the consent to search the trunk was not voluntarily given or that the evidence *Page 12 
should be suppressed because the consent for the search of the cooler was given by a person who claimed no ownership of the cooler. Moreover, these issues were not raised at the suppression hearing. Therefore, appellant cannot assert them for the first time on appeal.").
 {¶ 19} Moreover, VanHoose relies primarily and improperly on evidence presented at the trial for his argument. For instance, he points out that the State's expert witness, Dr. Wyman, testified on cross-examination that VanHoose's BAC shortly before his questioning would have been around 0.133, indicating that VanHoose would have been significantly impaired. He also notes that VanHoose and his wife testified that VanHoose had three to four beers after the accident as well as two "nerve pills." Furthermore, VanHoose testified at trial that at the time of the questioning he was confused and "in and out" of awareness and that he did not remember answering some of those questions. However, this evidence from a subsequent proceeding was not before the trial court during its deliberation on the motion to suppress; therefore, we cannot use it to review the propriety of that prior ruling. See State v. Davis (1964), 1 Ohio St.2d 28,203 N.E.2d 357, syllabus ("Where counsel for an accused objects to admission of a confession on the specific ground that it was not voluntarily made and there is no evidence to support a conclusion that it was not voluntarily made, the accused cannot, after trial, successfully maintain that the court erred in overruling the objection by then relying upon a valid ground for his objection which was not called to the court's attention at a time when such error could have been avoided and corrected.");State v. Kazmerczak, Wood App. No. WD-02-024, 2003-Ohio-2909, at ¶ 13 ("The general rule is that `an appellate court will not consider any error which counsel *Page 13 
for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court'" (quotingState v. Awan (1986) 22 Ohio St.3d 120, 122)).
 {¶ 20} VanHoose also raises two arguments regarding the evidence that did come in at the suppression hearing. First, VanHoose argues that the fact that Trooper Ruth had to write out the statement for him shows that he was too intoxicated to waive his rights. However, Trooper Ruth testified at the suppression hearing that he usually wrote out the statements of suspects himself both for readability and because the State Patrol had a policy encouraging such a practice. That a law enforcement officer wrote out VanHoose's statement does not, in itself, demonstrate that the statement was involuntary. See State v.Aguirre, Gallia App. No. 03CA5, 2003-Ohio-4909, at ¶ 29 ("[Appellant's statement is not involuntary simply because Trooper Wells wrote the statement."). VanHoose also argues the fact that VanHoose's answers themselves were not clear and coherent shows VanHoose was not capable of waiving his rights. However, we cannot tell from the answers given whether he was unable or unwilling to answer certain questions, and the written statement by itself tells us nothing about the manner in which VanHoose answered these questions.
 {¶ 21} Based upon the evidence presented at the hearing, we conclude it supports the judgment denying the motion to suppress. Trooper Ruth testified he explained VanHoose's rights to him and VanHoose understood that he was waiving those rights. Also, the State produced VanHoose's signed waiver of his rights. Sergeant Neal testified at the suppression hearing that after arresting VanHoose, he observed only that VanHoose had red eyes and a moderate odor of alcohol. He *Page 14 
specifically stated that the odor "wasn't fresh. It was more of a stale odor of an alcoholic beverage." He indicated he did not observe any other indicia of intoxication. Trooper Ruth and Sergeant Neal's testimony supports the trial court's conclusion that VanHoose voluntarily waived his rights. See Aguirre, at ¶ 24 (finding sufficient evidence of waiver where officer testified he properly advised defendant of her rights, the defendant understood her rights, and the defendant signed a waiver of her rights); see also State v. Scott (1980),61 Ohio St.2d 155, 400 N.E.2d 375, paragraph one of the syllabus (stating that "an express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver"). Therefore, we overrule his second assignment of error. V. Ex Post Facto, Due Process, and Ineffective Assistance of Counsel
 {¶ 22} Because VanHoose's third and fourth assignments of error address similar issues, we discuss them together. VanHoose argues that the trial court committed plain error in applying the remedial holding of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, to crimes predating that decision. He also contends that trial counsel was ineffective for failing to raise an ex post facto and due process objection at sentencing based on the retroactive application ofFoster. We reject both claims.
 {¶ 23} In Foster, the Supreme Court of Ohio found that several of Ohio's sentencing statutes, including R.C. 2929.14(B), were unconstitutional to the extent that they required judicial fact-finding before imposition of maximum, consecutive, or greater-than-minimum sentences. Id. at paragraphs one, three, and five of the syllabus. Applying the remedy used by the Supreme Court of the United States inUnited States v. Booker (2005), 543 U.S. 220, the Court severed the offending unconstitutional *Page 15 
provisions in their entirety from the statutes. Foster at paragraphs two, four, and six of the syllabus, and ¶ 99. The Court stated that trial courts now "have full discretion to impose a prison sentence within the statutory range [of R.C. 2929.14(A)] and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus.
 {¶ 24} VanHoose argues that at the time he committed his crimes, he enjoyed a statutory presumption that the sentence imposed would consist of a minimum term of imprisonment. He argues Foster retroactively removed that presumption. We have consistently rejected this argument on the merits and have held that a trial court does not violate due process principles or commit plain error by applying Foster to defendants who committed their offenses before that decision was released. State v.Miller, Washington App. No. 06CA57, 2007-Ohio-6909, at ¶¶ 35-36;State v. Henthorn, Washington App. No. 06CA62, 2007-Ohio-2960, at ¶13-14; State v. Henry, Pickaway App. No. 06CA8, 2006-Ohio-6942, at ¶¶ 8-11; State v. Grimes, Washington App. No. 06CA17, 2006-Ohio-6360, at ¶¶ 9-10. Other intermediate courts in Ohio have reached the same conclusion. State v. Cain, Franklin App. No. 06AP-682, 2007-Ohio-945, at ¶ 6; State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162, at ¶ 16; State v. Hildreth, Lorain App. No. 06CA008879, 2006-Ohio-5058, at ¶ 10; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42. The trial court did not commit any error in applyingFoster.
 {¶ 25} Miller v. Florida, (1987), 482 U.S. 423, which VanHoose relies upon, is distinguishable. In that case, Florida's sentencing guidelines in force at the time Miller *Page 16 
committed his crime provided a presumptive range of 3 1/2 to 4 1/2 years in prison, which a trial court could impose without explanation. A sentence in that range was not subject to appellate review. A legislative change that occurred between the commission of the crime and Miller's sentencing increased the range of Miller's presumptive sentence to 5 1/2 to seven years. Using the new scheme, the trial court imposed a sentence of seven years. Under the prior law, Miller could have sought appellate review of a seven year sentence; under the retroactively applied new law, he could no longer seek appellate review of the sentence because it fit within the new presumptive range. The Supreme Court of the United States held that this sentence violated ex post facto principles because the sentence under the later guidelines "foreclosed his ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law." Id. at 433. The court also noted that the Florida legislature increased the presumptive minimum sentence and denied review of that sentence with the intention to inflict a greater punishment on those who fell within its ambit.
 {¶ 26} Here, VanHoose overlooks the fact the Supreme Court of Ohio did not increase the presumptive maximum sentence when it served R.C.2929.14(B) in its entirety. Rather, the presumptive maximum term of imprisonment before and after Foster remained the same. So did the presumptive minimum. Likewise, so did his right to appeal any sentence that was contrary to law. Furthermore, although VanHoose claims entitlement to the imposition of a minimum sentence,
 "[t]he law before Foster never mandated imposition of minimum sentences on offenders who had not previously served a prison term, as appellant asks us to do here. By demanding application of a presumption in favor of a minimum sentence, but not allowing any means by which the *Page 17 
presumption can be overcome, `appellant essentially seeks the benefit of a state of law that never existed.'"
State v. Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889, at ¶ 12, quoting State v. Rosado, Cuyahoga App. No. 88504, 2007-Ohio-2782, ¶ 7, quoting in turn State v. Paynter, Muskingum App. No. CT2006-0034,2006-Ohio-5542, at ¶ 39.
 {¶ 27} Consequently, because the trial court did not err by imposing non-minimum sentences, VanHoose cannot show that trial counsel was constitutionally ineffective for failing to raise this argument. To obtain the reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Issa (2001),93 Ohio St.3d 49, 67, 752 N.E.2d 904. To demonstrate prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different.State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Because the imposition of a non-minimum sentence does not violate due process and ex post facto principles, VanHoose cannot show either a deficient performance or prejudice.
 {¶ 28} For these reasons, we overrule VanHoose's third and forth assignments of error. Therefore, we affirm his convictions and sentences.
 JUDGMENT AFFIRMED. *Page 18 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. Kline, J.: Concur in Judgment and Opinion. *Page 1