OPINION
{¶ 1} Appellant, Raymond V. Daughenbaugh, Jr. ("Daughenbaugh"), appeals the judgment of conviction and sentence for domestic violence in the Common Pleas Court of Seneca County.
 {¶ 2} On June 24, 2003, Daughenbaugh and Sherry Lamb ("Lamb") were residing together with their two children. During the day on June 24, 2003, Lamb went swimming with her children, Daughenbaugh's sister, Tara Haas, Tara's husband and their nieces. Some friends of Tara's husband also went swimming. After swimming, Lamb saw Daughenbaugh's car parked in front of Daughenbaugh's sister's home, Kimberly Stacy. Lamb stopped her car in front of Kim's house. Daughenbaugh approached Lamb's car and accused her of cheating on him because she had gone swimming with other men. Daughenbaugh entered the passenger side of Lamb's vehicle.
 {¶ 3} Lamb testified that an argument ensued between her and Daughenbaugh and that Daughenbaugh punched her in the head and face. Lamb testified that she backhanded Daughenbaugh but that he continued to hit her with their two-year-old son in the backseat. Paul Stacy, Kimberly's husband, testified that he and Daughenbaugh's brother, Randy Daughenbaugh, forced the door of the vehicle open and removed Daughenbaugh. Paul further testified that as he tried to separate Daughenbaugh and his brother who were wrestling on the ground, Daughenbaugh punched Paul in the back of his head. Daughenbaugh admitted that a verbal argument took place between him and Lamb but stated he never struck Lamb during the argument. Randy Daughenbaugh testified that he and Paul never forcibly removed Daughenbaugh from the vehicle.
 {¶ 4} Lamb drove to her mother's house once Daughenbaugh was out of her vehicle. While Kim was on the phone with Tara Haas she asked Tara to call the police. Officers from the Fostoria Police Department responded. The police officer who interviewed Lamb did not note any injuries. After interviewing Lamb and having her sign a short form of the domestic violence form, Daughenbaugh was arrested. Lamb arrived at the Fostoria Police Department the following day to have photographs taken of injuries she claimed occurred during the altercation with Daughenbaugh.
 {¶ 5} On July 29, 2003, Daughenbaugh was indicted on one count of domestic violence in violation of R.C. 2929.25(A), a felony of the fifth degree. Daughenbaugh pled not guilty to the charge and a trial date was set for December 8, 2003. Due to a scheduling conflict, the trial was continued until December 15, 2003. The state filed a motion to amend the indictment on December 12, 2003. The state sought to include the words "or attempt to cause" in the indictment. Daughenbaugh filed an objection to the motion to amend the indictment. On December 15, 2003, prior to the start of trial, the trial court heard arguments on the motion to amend the indictment. The court subsequently granted the state's motion and also granted Daughenbaugh's request for a continuance of the jury trial.
 {¶ 6} Daughenbaugh's trial began on January 8, 2004. The jury returned a verdict of guilty to the charge of domestic violence on January 9, 2004. The matter came before the court for sentencing on February 24, 2004. The trial court sentenced Daughenbaugh to six months incarceration. It is from this judgment that Daughenbaugh now appeals, asserting the following four assignments of error.
The trial court violated the Appellant's right to due processunder the Fourth and Fourteenth Amendments to the Constitution ofthe United States and Article I, Section 10, of the Constitutionof the State of Ohio, when it permitted the State of Ohio toamend the indictment the morning of trial.
 The trial court violated the Appellant's right to due processunder the Fourth and Fourteenth Amendments to the Constitution ofthe United States and Article I, Section 10 of the Constitutionof the State of Ohio when it granted the Motion in Limine offeredby the State of Ohio to prohibit the use of a letter written bythe alleged victim detailing her affair with another man at ornear the time of the offense.
 Raymond Daughenbaugh was deprived of his rights to effectiveassistance of counsel by his retained counsel, in contraventionof the Sixth and Fourteenth Amendments to the United StatesConstitution, and Article One, Section Ten of the OhioConstitution, which severely prejudiced the rights of Appellantand did not further the administration of justice.
 The conviction in the trial court should be reversed becauseit is against the manifest weight of the evidence and because theevidence supporting it was insufficient as a matter of law toprove the conviction beyond a reasonable doubt.
 {¶ 7} In the first assignment of error, Daughenbaugh argues that the trial court erred in allowing the state to amend the indictment against Daughenbaugh. The original indictment read, in pertinent part: "On or about the 24th day of June, 2003 in Seneca County, Ohio, RAYMOND V. DAUGHENBAUGH, JR. did, knowingly cause physical harm to Sherry Lamb, a family or household member * * *." In its motion filed on December 12, 2003, the state sought to amend the indictment to include the words "or attempt to cause" before the words "physical harm" in the indictment. After a hearing on the motion, the trial court permitted the indictment to be amended. Daughenbaugh contends that this amendment was a substantial change in the charge and should not have been permitted by the trial court.
 {¶ 8} We must determine whether the amendment to the indictment comported with Crim.R. 7(D), which sets forth the procedures for amending indictments. This rule provides in part:
The court may at any time before, during, or after a trialamend the indictment, information, complaint, or bill ofparticulars, in respect to any defect, imperfection, or omissionin form or substance, or of any variance with the evidence,provided no change is made in the name or identity of the crimecharged.
The rule clearly permits errors of omission to be corrected during the course of or even after the trial, as long as such amendment does not change the name or identity of the crime charged. It was, therefore, proper for the court to address the issue of amending the indictment on the morning of the day the trial was scheduled to begin.
 {¶ 9} We must now determine whether the amendment to the indictment for Daughenbaugh changed either the name or the identity of the crime charged. The Ohio Supreme Court in Statev. O'Brien (1987), 30 Ohio St.3d 122, 508 N.E.2d 144, set forth the Crim.R. 7(D) analysis. This court has applied the analysis ofO'Brien to uphold the amendment of indictments, most recently in State v. Jones, Marion App. No. 9-02-39, 2003-Ohio-1576. See also State v. McGee (1998), 128 Ohio App.3d 541,715 N.E.2d 1175. Using this analysis, we are unable to agree with Daughenbaugh that the addition of the phrase "or attempt to cause" changed either the name or the identity of the crime charged herein. Both before and after the amendment of the indictment, the name of the crime remained the same: domestic violence. Likewise, the identity of this crime was not changed by the addition of the phrase "or attempt to cause" to the indictment. Neither the penalty nor the degree of the offense was changed as a result of the amendment. The Fourth District Court of Appeals in State v. Robinette (1997), 118 Ohio App.3d 450,455, 693 N.E.2d 305, held that, under the holding of O'Brien,
amending a complaint for domestic violence, pursuant to R.C.2919.25(A), by adding the word "knowingly" was proper and did not require reissuing the complaint. Similarly, the addition of the phrase "or attempt to cause" to Daughenbaugh's indictment did not change the name or identity of the crime of domestic violence. Therefore, the amendment was proper pursuant to Crim.R. 7(D).
 {¶ 10} However, Crim.R. 7(D) further provides that:
If any amendment is made to the substance of the indictment,information, or complaint, or to cure a variance between theindictment, information or the complaint and the proof, thedefendant is entitled to a discharge of the jury on thedefendant's motion, if a jury has been impaneled, and to areasonable continuance, unless it clearly appears from the wholeproceedings that the defendant has not been misled or prejudicedby the defect or variance in respect to which the amendment ismade * * *.
Therefore, if it was determined that the amendment changed the substance of the indictment, Daughenbaugh was entitled to a discharge of the jury and a reasonable continuance if he was misled or prejudiced by the amendment. In this case, the court determined that the best course of action was to grant the motion of the state to amend the indictment. However, the trial court determined that a continuance of the jury trial was appropriate if so requested by Daughenbaugh. At Daughenbaugh's request the trial date was continued from December 15, 2003 until January 8, 2003. Under these circumstances, we cannot determine that Daughenbaugh was misled or prejudiced by the amendment to the indictment since he was afforded nearly a month to prepare for trial on the amended indictment. Therefore, we hold that the trial court did not err in permitting the state to amend the indictment and Daughenbaugh's first assignment of error is overruled.
 {¶ 11} In his second assignment of error, Daughenbaugh argues that he should have been permitted to introduce into evidence a letter written by the victim, Sherry Lamb. The state filed a motion in limine regarding the letter and the trial court determined that the letter was inadmissible because it was not relevant to the proceedings. Counsel for Daughenbaugh sought to question Lamb about whether she was unfaithful to Daughenbaugh and when the trial court sustained the state's objection to the line of questioning, counsel sought to proffer the letter into evidence. The court allowed counsel for Daughenbaugh to proffer the letter, dated July 23, 2003.
 {¶ 12} Daughenbaugh argues that the letter written by Lamb verifies that she was having an affair with Jay, one of the men that went swimming with Lamb on June 24, 2003. Daughenbaugh sought to admit the letter as corroboration of his belief that Lamb was having an affair which he believed was her motivation for bringing domestic violence charges against him. After reviewing the record, including the proffered letter, we conclude that the trial court properly excluded the letter.
 {¶ 13} It is well established that a trial court has broad discretion in determining the admissibility of evidence. Statev. Long (1978), 53 Ohio St.2d 91, 98, 372 N.E.2d 804. A trial court's decision regarding the admissibility of evidence will not be overruled unless it can be shown that the trial court abused its discretion and the defendant was materially prejudiced thereby. Id., citing State v. Hymore (1967), 9 Ohio St.2d 122,128, 224 N.E.2d 126. In the case sub judice, the trial court excluded the evidence under Evid.R. 402, which provides that "[a]ll relevant evidence is admissible * * *" and "[e]vidence which is not relevant is not admissible." Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, pursuant to Evid.R. 403(A), even if evidence is determined to be relevant, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 14} The proffered letter contains a reference to sexual activity that took place between Lamb and Jay on July 23, 2003, nearly a month after the domestic violence incident on June 24, 2003. Nothing in the letter would have the tendency to make the existence of any fact surrounding the domestic violence charge more or less probable. Rather, it appears the evidence would have the effect of being unfairly prejudicial to the state, for Lamb's sexual behavior was not at issue in the case. Therefore, the evidence was properly excluded under Evid.R. 402 and 403(A).
 {¶ 15} Daughenbaugh argues that the letter was relevant because it revealed Lamb's motivation for making false allegations. Daughenbaugh argues that the letter should have been allowed for impeachment purposes. In his brief, Daughenbaugh provides the language of Evidence Rules 607, 608, 613 and 616, which all relate to the credibility of a witness and impeaching a witness. However, since Daughenbaugh fails to direct our attention to the portion of Lamb's testimony he sought to impeach, and our review of the testimony reveals no inconsistencies or lack of veracity, it is unnecessary for us to review the application of these Rules of Evidence in this case. We conclude that the trial court properly excluded the letter and Daughenbaugh's second assignment of error is overruled.
 {¶ 16} In his third assignment of error, Daughenbaugh argues that he was deprived of his right to effective assistance of counsel. Daughenbaugh provides the standard for determining ineffective assistance of counsel as set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, but he fails to include an argument with the reasons that support his contentions or citations to parts of the record which support his claim of ineffective assistance of counsel, as required by App.R. 16(A)(7). Pursuant to App.R. 12(A)(2), this court is not required to address "an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." See Kremer v.Cox (1996), 114 Ohio App.3d 41, 682 N.E.2d 1006; Hawley v.Ritley (1988), 35 Ohio St.3d 157, 519 N.E.2d 390. Since Daughenbaugh has failed to allege any specific errors on the part of trial counsel, there is nothing for this court to review with regard to this assignment of error. Accordingly, the third assignment of error is overruled.
 {¶ 17} In the fourth assignment of error, it appears that Daughenbaugh argues his conviction was against the manifest weight of the evidence and that the evidence was insufficient to support his conviction. While Daughenbaugh supports this assignment of error with citations to the parts of the record upon which he relies, he fails to provide citations to any authority in support of the argument, as required by App.R. 16(A)(7). Despite Daughenbaugh's failure to provide this court with any authority, we have chosen to address this assignment of error on its merits.
 {¶ 18} In State v. Thompkins, 78 Ohio St.3d 380, paragraph two of the syllabus, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." An appellate court can determine that a judgment of the trial court is supported by sufficient evidence and yet still conclude that the judgment is against the manifest weight of the evidence. Id. at 387. Therefore, we will address Daughenbaugh's claims of the conviction being against the manifest weight of the evidence and insufficiency of the evidence to support the conviction separately.
 {¶ 19} We begin by discussing the sufficiency of the evidence. Determining whether the evidence is legally sufficient to support a verdict is a question of law. Thompkins,78 Ohio St.3d at 386. In order to reverse a trial court's judgment on the basis that the judgment is not sustained by sufficient evidence, a majority of the panel must concur in the determination. Id. at paragraph three of the syllabus. In reviewing a challenge to the sufficiency of the evidence supporting a conviction, a reviewing court must determine whether the state has met its burden of production at trial. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, 574 N.E.2d 492. On review for sufficiency, courts do not assess whether the state's evidence is to be believed, only whether, if believed, the evidence against the defendant would support a conviction. Id.
 {¶ 20} Our review of the record reveals that the state produced evidence at trial that would support a conviction of domestic violence. The state presented testimony of the victim, Sherry Lamb, that Daughenbaugh struck her on June 24, 2003, causing her injury. Lamb also testified that Daughenbaugh had to be physically removed from her vehicle by his brother and brother-in-law. Two other witnesses, Kimberly Stacy and Paul Stacy corroborated Lamb's testimony that Daughenbaugh struck her and had to be physically removed from Lamb's vehicle. Daughenbaugh and his brother, Randy Daughenbaugh both testified that Daughenbaugh never struck Lamb. However, the state's evidence, if believed by the jury, was sufficient to prove the elements of domestic violence beyond a reasonable doubt.
 {¶ 21} In order for an appellate court to reverse the trial court's judgment on the basis that the conviction is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. Thompkins, 78 Ohio St.3d at 389.
Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of the proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'
Id. at 387 (citations omitted). To reverse a conviction on the manifest weight of the evidence, "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice * * *."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 22} After reviewing the record in this case, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. While Daughenbaugh asserts that "[t]here was no evidence presented at trial of any domestic violence occurring between Appellant and Sherry Lamb", the record provides otherwise. Appellant's Merit Brief, p. 14. Three witnesses testified for the state that witnessed the incident on June 24, 2003. While Daughenbaugh and his brother, Randy, testified that Daughenbaugh never struck Lamb, the jury was free to doubt the credibility of these witnesses. Randy admitted in his testimony that he had been incarcerated for violating his probation on a domestic violence offense. Daughenbaugh claimed that he was the victim of domestic violence rather than the aggressor, although Daughenbaugh did not initially report to authorities that Lamb struck him or that he suffered any injuries. It was not until his trial date was scheduled that Daughenbaugh sought to file a complaint against Lamb. The jury was entitled to find greater credibility in the witnesses for the state than in the witnesses for the defense. Accordingly, the jury's resolution of conflicting testimony was not against the manifest weight of the evidence and Daughenbaugh's fourth assignment of error is overruled.
 {¶ 23} Having found no merit with Daughenbaugh's assignments of error, we affirm the judgment of the Common Pleas Court of Seneca County.
Judgment affirmed.
Shaw, P.J., and Rogers, J., Concur.