OPINION *Page 2 
{¶ 1} Defendant-Appellant Gabriel T. James ("James") appeals from the September 17, 2007 Judgment of the Court of Common Pleas, Auglaize County, Ohio, sentencing him to four years in prison for his conviction for Domestic Violence, in violation of R.C. 2919.25(A)(D)(4), a felony of the third degree.
 {¶ 2} This matter stems from an altercation that occurred on March 2, 2007 between James and his then wife, Mona James, nka Mona Corson ("Corson"). Corson testified that on March 2, 2007 she had been sleeping all day when James woke her up, telling her he wanted to go to Lima to get some money from his mother. According to Corson, she told James that she wanted to get a shower before they went to Lima so that she would be ready to leave for work by 9:30p.m. when they returned from Lima.
 {¶ 3} James became very agitated. Corson showered and was getting ready for work, putting on steel-toed boots when James grabbed one of her boots and threw it across the kitchen and pulled her jacket off her, trying to take her cell phone. Corson stated that it hurt when James tried to pull off her jacket and she yelled out.
 {¶ 4} Once Corson started yelling, James placed his hands over her mouth and slammed her backwards into a wooden table causing Corson to hit her head. James slammed Corson into the table so hard that when her head hit, it caused a *Page 3 
glass vase that was sitting on the table to break. Corson remembers being very frightened.
 {¶ 5} Corson was able to slide off the table onto a rug in the kitchen as James continued to yell at her. Corson then got up and went into the living room, sitting on a loveseat. When she sat down, she touched the back of her head and discovered a lot of blood. James then told her "You need to clean your face up and take a shower and wash all that evidence off you." (Tr.p. 121).
 {¶ 6} While Corson was sitting on the loveseat, James left the room. Corson then took off running for the front door. James met her at the door and slammed her into the wall, creating a hole in the wall where her head went through. Corson testified that her recollection at this point was fuzzy, but that James led her into the kitchen to sit down. After taking Corson into the kitchen, James was still yelling and slammed Corson into a chair which fell backwards onto the floor.
 {¶ 7} James again suggested that Corson go take a shower. Corson did go upstairs but went to sit down on the bed. James stopped her; telling her that she would get `evidence' all over the bed. Corson was eventually able to lie down, and James went downstairs and cleaned up the broken glass.
 {¶ 8} While Corson was sitting on the bed, she remembered that she had purchased a gun which was in the bedroom. Corson kept the clip and the gun *Page 4 
separate, and was afraid to load the gun. Instead, she retrieved the unloaded gun and put it between the mattress and the box springs.
 {¶ 9} James returned to the bedroom, hugged Corson, and told her "we can work this out." (Tr. p. 126). Corson told James to get his things and she would take him to Lima, and then she would go to the emergency room. James did not want her to go to the emergency room alone for fear she would tell them what happened. Corson told James that she would tell them she fell, but that she really needed medical attention.
 {¶ 10} James had Corson's keys and cell phone and a basket of clothes to put in the trunk. Corson asked James to let her in the driver's side, because he did not have a license, so she would have to drive. James let her in, but kept the keys. Corson, however, had a spare key in her purse. When James went to put the basket of clothing in the trunk, Corson pulled the spare key from her purse, started the car, locked the doors, and began honking the horn. Corson then drove to a nearby house and never stopped honking the horn until she saw her son, James McDade, and his girlfriend open the door.
 {¶ 11} McDade's girlfriend, Sara, called the police as soon as Corson arrived. Corson was taken in an ambulance to St. Rita's emergency room where she received staples for her head injury. *Page 5 
 {¶ 12} On March 15, 2007 James was indicted on one count of Domestic Violence, in violation of R.C. 2919.25(A)(D)(4), a felony of the third degree, and one count of Abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree. James appeared on March 26, 2007 and pled not guilty to both charges.
 {¶ 13} A jury trial was held on July 19-20, 2007. On July 20, 2007 the jury found James guilty of Domestic Violence, and not guilty of the charge of Abduction.
 {¶ 14} On September 17, 2007 James was sentenced to four years in prison for his conviction for Domestic Violence, in violation of R.C. 2919.25(A)(D)(4).
 {¶ 15} James now appeals asserting two assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED MR. JAMES' RIGHT TO DUE PROCESS BY PROHIBITING HIM FROM CROSS-EXAMINING THE COMPLAINING WITNESS, HIS EX-WIFE, ABOUT HOW SHE ALLEGEDLY USED FALSE DOMESTIC VIOLENCE CHARGES TO GAIN LEVERAGE IN THE [SIC] HER FOUR PREVIOUS DIVORCES FROM HER FOUR PREVIOUS MARRIAGES. EVID. R. 403(A); FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED BY IMPOSING A NON-MINIMUM PRISON TERM IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. SENTENCING ENTRY, APX. AT A-1. *Page 6 
 {¶ 16} In his first assignment of error, James argues that the trial court erred by prohibiting him from cross-examining Corson concerning allegations of domestic violence against her four prior husbands.
 {¶ 17} As an initial matter we note that decisions regarding the admissibility of evidence are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. State v. Yohey (March 18, 1996), 3d Dist. No. 9-95-46, citing State v. Graham (1979), 58 Ohio St.2d 350, 390 N.E.2d 805 andState v. Lundy (1987), 41 Ohio App.3d 163. A trial court's decision regarding the admissibility of evidence will not be overruled unless it can be shown that the trial court abused its discretion and the defendant was materially prejudiced thereby. State v. Daughenbaugh, 3rd Dist. No. 13-04-11, 2004-Ohio-4528 citing State v.Long (1978), 53 Ohio St.2d 91, 98, 372 N.E.2d 804 and State v.Hymore (1967), 9 Ohio St.2d 122, 128, 224 N.E.2d 126. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 18} In the present case, on cross examination, James' counsel questioned Corson about her prior marriages as follows:
 Q. So you've been married more than one (1) time?
 A. Right *Page 7 
 Q. How many times?
 A. Four (4).
(Tr.p. 137).
 {¶ 19} At this point, the State objected to this line of questioning, regarding the relevance of Corson's prior relationship history to the current case. James' counsel responded as follows:
 Well it goes to her motive in dealing with her actions that night. She was going to get even with him. She was going to do like she has done in her other divorces. She was going to make sure that he wasn't around. She subsequently divorced him when he was in custody. That she, — basically and she brought it up herself by accusing a, — I think I have a perfect right to ask why she had a different name other than James and if it wasn't her maiden name.
(Tr.p. 137-138).
 {¶ 20} The State responded that Corson's prior divorces, and how those divorces were conducted, should not make Corson less of a victim in the present case. The court ruled that
 Counsel has talked about wanting to show information concerning the way she has conducted herself in other marriages in the past. 403(A) applies, objection sustained.
(Tr.p. 138).
 {¶ 21} James testified at trial that Corson threatened him with her gun on March 2, 2007 because she thought James was going to leave her. James admitted that the altercation described earlier did, in fact, occur. However, he alleged that *Page 8 
all of his actions were in self-defense because Corson threatened him with a gun. Furthermore, James argues on appeal that how Corson's prior marriages ended would have supported his contention that she did not want him to leave, threatened him with a gun, and provoked him into injuring her.
 {¶ 22} This Court addressed a similar argument in State v.Daughenbaugh, 3rd Dist. No. 13-04-11, 2004-Ohio-4528. Daughenbaugh, who was being prosecuted for Domestic Violence, sought to introduce evidence that the victim was having an affair. InDaughenbaugh, the defendant did not seek to introduce the evidence to impeach any statements by the victim, rather he sought to introduce evidence of the affair to provide a motive for fabricating the allegation of Domestic Violence. This Court found that the trial court properly excluded the evidence under Evid. R. 403(A) as the victim's sexual behavior was not at issue and the prejudicial effect of the information outweighed any probative value. Id. at ¶ 14.
 {¶ 23} In the present case, evidence relating to Corson's prior divorces was not offered to impeach any of her testimony. Rather, it was offered to prove a motive for her fabrication. However, any substantial testimony as to Corson's prior marital history could have had the impact of persuading the jury to view her in an unduly negative light. SeeState v. Hardy, 12th Dist. No. 2002-06-141, 2003-Ohio-4745 (the trial court did not abuse its discretion in excluding from evidence *Page 9 
cards that the victim, of unlawful sexual conduct with a minor, had sent the defendant, including an adult-themed Valentine's Day card where the introduction of this evidence could have caused the jury to view the victim in an unduly negative light). See also State v. Koballa, 8th Dist No. 82013, 2003-Ohio-3535; State v. Birkman
(1993), 86 Ohio App.3d 784, 621 N.E.2d 1266.
 {¶ 24} Moreover, James' main argument for why he was prejudiced by the omission of Corson's prior divorce history was because this was a "he said/she said" case. However, the State produced the testimony of Scott Yaney, who worked with James at Agrana Foods. Yaney called the house Corson and James shared during the course of the altercation. James answered the phone and spoke with Yaney who testified that he heard Corson in the background.
 Q. What did you hear in the background?
 A. Mona like screaming in the background.
 Q. And did you, — do you recollect any particular words?
 A. Yeah, she said she was sitting in a pool of blood.
(Tr.p. 205).
 {¶ 25} The jury heard the testimony of Corson, James, and Yaney. It chose to believe the version told by Corson and Yaney. That does not entitle James to use any information possible to attack Corson's character. *Page 10 
 {¶ 26} This Court also notes that no information was proffered by James' counsel concerning what he expected Corson to testify to, with respect to her prior divorces. Nothing in the record before this Court demonstrates Corson's behavior in her prior divorces, or that Corson made any prior allegations of domestic violence, true or false. Without some proffer of the evidence counsel expects to elicit, it is impossible for James to overcome to requirements of Evid. R. 403(A).
 {¶ 27} We find that the trial court did not abuse its discretion in disallowing the introduction of information concerning Corson's prior divorces. Accordingly, James' first assignment of error is overruled.
 {¶ 28} In his second assignment of error, James' argues that the trial court erred in imposing a non-minimum prison term for his conviction of Domestic Violence in violation of R.C. 2919.25(A)(D)(4), a felony of the third degree.
 {¶ 29} In reviewing sentencing decisions of a trial court, an appellate court conducts a meaningful review of the sentence decision.State v. Carter, 11th Dist. No. 2003-P-0007,2004-Ohio-1181. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law.Carter, at ¶ 44 citing State v. Comer (2003), 99 Ohio St.3d 463, 476,793 N.E.2d 473, 2003-Ohio-4165; R.C. 2953.08. *Page 11 
 {¶ 30} Additionally, a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. Id.
 {¶ 31} The Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing in State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. In Foster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender. Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, 2006-Ohio-856
at ¶ 100; see also State v. Mathis (2006), *Page 12 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855 at paragraph three of the syllabus, ¶ 37.
 {¶ 32} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v.Smith, 3rd Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26
citing Mathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citingState v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448;State v. Amett (2000), 88 Ohio St.3d 208, 205, 724 N.E.2d 793,2000-Ohio-302; State v. McAdams, 162 Ohio App.3d 318, 833 N.E.2d 373,2005-Ohio-3895; and State v. Patterson 8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12
that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id. citing State v.Polick (1995), 101 Ohio App.3d 428, 431, 655 N.E.2d 820; State v.Gant, 7th Dist. No. 04-MA-252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes
6th Dist. No. WD-05-024, 2005-Ohio-6405. *Page 13 
 {¶ 33} In the present case, the trial court conducted James' sentencing hearing pursuant to R.C. 2929.19, which provides, in relevant part, as follows:
 (A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative . . . and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the . . . finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
 * * *
 (B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the pre-sentence investigation report. . .
 {¶ 34} A review of the record in the present case demonstrates that the trial court followed the procedures set forth in R.C. 2929.19 and considered both R.C. 2929.11 and R.C. 2929.12 in sentencing James. Furthermore, we find that James' sentence was supported by the record.
 {¶ 35} Specifically, we note that at James' sentencing hearing, the trial court considered James' copious criminal history.
 The Court: You were charged with Aggravated Menacing in November of 1993, who did that involve?
 * * * *Page 14 
 The Court: Your,-in 1999 you were charged with domestic violence but pled to a reduced charge of intoxication. Who's Keisha Scales?
 Gabriel James: It was a girlfriend of mine.
 * * *
 The Court: Your first trip to prison was out of Allen County?
 Gabriel James: Yes, Sir.
 The Court: That was for theft and forgery?
 Gabriel James: Yes, Sir.
 * * *
 The Court: And then domestic violence in 2002 was dismissed, that was on Julie Ast?
(Tr.p. Sentencing 10-13).
 {¶ 36} The record before this Court continues on, with the trial court exploring James' additional convictions for domestic violence. The trial court also explored James' gang affiliations with the Mexican Mafia, which he joined in prison, and the Folks and Crips which he was affiliated with as a youth.
 {¶ 37} Additionally, we note that the trial court also stated in its September 17, 2007 Judgment Entry that it had "considered the record, oral statements, any Victim Impact Statement and Pre-Sentence Report prepared, well as the principles and purposes of sentencing under Ohio Revised Code § 2929.11 and has balanced the seriousness and recidivism factors under Ohio Revised Code 2929.12." *Page 15 
 {¶ 38} Thus, although the trial court was not required to set forth its specific findings, nor was it required to specifically state that it considered each of the subsections of R.C. 2929.11, R.C. 2929.12, or R.C. 2929.13 pursuant to Foster, and Smith, supra, the record clearly evinces that the trial court considered the requisite factors of R.C. 2929.12 in imposing James' prison term. Therefore, we cannot clearly and convincingly find that the record does not support James' sentence or that the sentence is otherwise contrary to law.[1]
 {¶ 39} Finally, we note that James was convicted of Domestic Violence in violation of R.C. 2919.25(A)(D)(4), a felony of the third degree.
 {¶ 40} Pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
 * * *
 (3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years.
 {¶ 41} Accordingly, we note that James could have been sentenced to a prison term of as little as one year for his felony conviction, or the maximum prison term of five years for his felony conviction. In this case, the trial court *Page 16 
sentenced James to a prison term of four years for his felony conviction of Domestic Violence. Accordingly, we find that the record supports James' sentence.
 {¶ 42} Finally, we note that, although not specifically raised as an assignment of error, James eludes to the argument that his trial counsel was ineffective for not objecting to his sentence. Although not properly raised, we elect to briefly address this argument.
 {¶ 43} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674).
 {¶ 44} Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142. The second prong, *Page 17 
regarding reasonable probability, requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 45} As we found no error in the trial court's imposition of James' sentence, we cannot find that counsel was ineffective for failing to object to that sentence. Accordingly, James' second assignment of error is overruled.
 {¶ 46} Based on the foregoing, the September 17, 2007 Judgment of the Court of Common Pleas, Auglaize County, Ohio sentencing James to four years in prison for his conviction for Domestic Violence is affirmed.
Judgment Affirmed.
 PRESTON and ROGERS, J.J., concur.
[1] We note that the Ohio Supreme Court has accepted jurisdiction to review State v. Kalish, 11th Dist. No. 2006-L-093,2007-Ohio-3850. In Kalish, the Ohio Supreme Court will likely address a conflict existing among the appellate courts in Ohio concerning the appropriate standard of review when a court reviews a sentence. This Court utilizes the clear and convincing standard of review; although some courts review a sentence for an abuse of discretion. Regardless, in the present case James' argument would fail under either standard as we do not find that the trial court committed an abuse of discretion when it sentenced James. *Page 1